Bryan J. Freedman (SBN 151990)
bfreedman@ftllp.com
September Rea (SBN 261121)
srea@ftllp.com
FREEDMAN & TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

Joshua G. Blum (SBN 249082)
jblum@blumlawpc.com
LAW OFFICES OF JOSHUA G. BLUM, P.C.
1901 Avenue of the Stars, Suite 1900
Los Angeles, California 90067
Telephone: (310) 277-7714
Facsimile: (310) 277-7713

Attorneys for Plaintiff
RAW TALENT, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

RAW TALENT, INC., a California corporation,

    Plaintiff,

vs.

BETHENNY FRANKEL, an individual; and DOES 1 through 10, inclusive,

    Defendants.

CASE NO.: **CV11-06577 DSF (FMOx)**

**FIRST AMENDED COMPLAINT:**
1. FRAUD;
2. BREACH OF ORAL CONTRACT;
3. QUANTUM MERUIT; AND
4. ACCOUNTING

**DEMAND FOR JURY TRIAL**

Plaintiff Raw Talent, Inc. ("Raw Talent") alleges as follows:

## THE PARTIES

1.     Raw Talent is, and at all times material herein has been, a corporation

1

FIRST AMENDED COMPLAINT

1. organized and existing under the laws of the State of California, duly authorized to conduct business in the State of California, having its principal place of business in the City of Los Angeles, County of Los Angeles, State of California.

2. Defendant Bethenny Frankel ("Frankel") is, and at all times material has been, domiciled in, and a citizen of, the State of New York. On information and belief, Frankel regularly conducts business in the County of Los Angeles, State of California.

3. Raw Talent sues Does 1 through 10, inclusive, herein under fictitious names. Raw Talent does not know their true names and capacities. When Raw Talent ascertains the Doe defendants' true names and capacities, it will amend this complaint by inserting their true names and capacities. On information and belief, each defendant named herein as a Doe acted with the other defendants and is responsible for the damages to Raw Talent herein alleged. Each reference in this complaint to defendants, or to any of them, also refers to all defendants sued under fictitious names.

4. On information and belief, at all times material herein, each of the defendants was the agent, servant, employee, representative, co-conspirator, or associate of each of the other defendants and acting within the course and scope of such relationship.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, $75,000.

6. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events giving rise to the claims occurred within this judicial district.

## SUMMARY OF THE CASE

7. This is a case about a reality television personality, Bethenny Frankel, willfully depriving her former management company, Raw Talent, of its contractual rights and justly earned commissions. Indeed, Frankel has become one of the world's most recognized and wealthiest reality television stars, with her hit show, *Bethenny*

2
FIRST AMENDED COMPLAINT

*Ever After*, and her low calorie Skinnygirl cocktail brand. Instead of showing appreciation to the source of much of her recent success—plaintiff Raw Talent—Frankel has willfully and knowingly fleeced it of an estimated $12 million in commissions. By this lawsuit, Raw Talent seeks to set the record straight by disclosing the facts surrounding Frankel's rise to success, hold Frankel liable for her deceitful and greedy conduct, and punish Frankel for her callous disregard for Raw Talent's rights.

8. In the summer 2008, Raw Talent was hired by Frankel to provide personal management services and in exchange, Frankel agreed to pay Raw Talent a 10% commission.

9. From the beginning of its representation, Raw Talent immediately helped to cultivate Frankel's career and guide her to become one of the most recognized and wealthiest reality television stars.

10. In August 2008, Frankel expressly and unambiguously requested Raw Talent's counsel and advice in order to market and develop Frankel's low calorie Skinnygirl cocktail line (the "Skinnygirl Cocktail Brand"). After months of providing career guidance to Frankel, and managing her professional affairs, she was able to execute a deal for the Skinnygirl Cocktail Brand.

11. In or around March 2011, Frankel sold her interest in the Skinnygirl Cocktail Brand to Fortune Beam Global Spirits & Wine Inc. for a purported $120 million. Notwithstanding her clear and unambiguous agreement and obligation to pay Raw Talent its 10% commission, Frankel now refuses.

12. As a result of Frankel's deceitful and malicious acts, Raw Talent has suffered grievous harm for which it seeks compensatory damages in an amount estimated to be in excess of $12 million. In addition, in order to punish Frankel for her despicable and outrageous behavior, and to deter her from engaging in this unlawful conduct in the future, Raw Talent seeks punitive damages —to be determined by the jury at the time of trial—but in an amount believed to be in excess

of $100 million.

## GENERAL ALLEGATIONS

**A.    Frankel Seeks Out Raw Talent to Develop and Enhance Her Career**

13.    In May 2008, Frankel was introduced to Raw Talent's co-President Doug Wald ("Wald"). At that time, Frankel was a cast member on *The Real Housewives of New York City* ("*Real Housewives*"). During their first meeting, Frankel and Wald discussed, among other things, Frankel's desire to star in her own reality television series. Shortly after Frankel and Wald's first meeting, Frankel contacted Wald, via e-mail, to express her interest in having Raw Talent represent her.

14.    Weeks later, in June 2008, Frankel made several calls and sent several e-mails to Wald in Los Angeles, California, seeking his advice and counsel regarding the creation of her own reality television series.

15.    In response to Frankel's requests, Wald commenced discussions with APA Talent and Literary Agency ("APA") in Los Angeles, California. Wald suggested APA to Frankel because of APA's experience representing reality television stars and because of their extensive relationships with corporate sponsors. After speaking with Wald, APA did express an interest in representing Frankel.

16.    In or around the beginning of July 2008, Frankel asked Wald to schedule a meeting with APA. To that end, Wald scheduled the meeting in Los Angeles, California for August 7, 2008.

17.    Throughout the month of July 2008, Frankel was communicating regularly with Wald, seeking his guidance, direction, and counsel regarding her *Real Housewives* contract and other potential business opportunities. In fact, during this month, Frankel even had her attorney, Adam Mehrfar ("Mehrfar"), communicating with Wald in order to obtain Wald's advice and guidance on entertainment related matters.

18.    On August 7, 2008, Frankel met with Wald and several APA agents at APA's Los Angeles, California office. The meeting was successful and Frankel

4
FIRST AMENDED COMPLAINT

decided to retain APA as her talent agency.

**B. Frankel and Raw Talent Enter Into the Oral Management Agreement**

19. Later in the afternoon on August 7, 2008, in Los Angeles, California, Frankel and Wald formally discussed having Raw Talent serve as her management company. Prior to entering into the oral management agreement, Frankel orally represented to Wald that she was specifically seeking his advice and counsel regarding the exploitation of the Skinnygirl Cocktail Brand. She explained to Wald that she believed the brand had the potential to be extremely lucrative and that she desired his guidance and direction to develop the brand. In that regard, during this meeting on August 7, 2008, Frankel expressly orally represented to Wald that any agreement relating to the exploitation of the Skinnygirl Cocktail Brand would be commissionable under their management agreement.

20. Thereafter, during the meeting, Wald on behalf of Raw Talent agreed to represent Frankel. Specifically, Wald on behalf of Raw Talent agreed to advise and counsel Frankel on matters pertaining to her professional career, engagements, and generally in all matters relating to her professional interests. In exchange, Frankel agreed to pay Raw Talent a 10% commission from all gross earnings received or earned by Frankel on any agreement, arrangement, or project in which negotiations had commenced during Raw Talent's representation, regardless of when the agreement, arrangement, or project was actually entered into and or began (the "Agreement").

21. On August 8, 2008, Frankel sent an e-mail to Wald confirming that she had retained Raw Talent.

**C. Pursuant to the Agreement, Raw Talent Advises and Counsels Frankel**

22. Throughout Raw Talent's representation, Frankel continuously sought Wald's advice and guidance on various career related matters, including, without limitation, a reality television series, a potential Sirius Satellite Radio show, various health food products, infomercials, a website development and hosting agreement, and

5
FIRST AMENDED COMPLAINT

1 the Skinnygirl Cocktail Brand.

2     23. Indeed, it was evident from the inception of Raw Talent's management of Frankel's career that Wald's advice and guidance on the Skinnygirl Cocktail Brand was an integral part of Raw Talent's representation.

    24. For example, on August 12, 2008, Frankel sent an e-mail to Wald requesting his advice, counsel, and direction in its development. Specifically, Frankel stated, "this skinnygirl margarita [sic] thing is out of hand. Every bartender says it is the only thing girls order. How do we get a deal to package it? APA should be on this."

    25. The following day Wald replied to Frankel expressly informing her that he had already spoken with APA regarding the Skinnygirl Cocktail Brand and that he had another call scheduled for later that afternoon to continue their discussions.

    26. Over the course of the following several weeks, Frankel's representatives were in discussions with David Kanbar ("Kanbar"), a liquor industry veteran, regarding forming a company to develop and market the Skinnygirl Cocktail Brand.

    27. On September 8, 2008, Frankel, Brian Dow ("Dow"), an agent at APA, and Kanbar met to discuss the Skinnygirl Cocktail Brand.

    28. On or about September 16, 2008, Kanbar provided Dow with a business proposal and an Executive Summary Presentation (the "Executive Summary") for the proposed new company.

    29. The Executive Summary outlined Kanbar's vision for the new venture, which provided in relevant part that: (1) Frankel and Kanbar would form a company to develop and market the Skinnygirl Cocktail Brand; (2) they would exploit Frankel's celebrity to build brand awareness; (3) the first product would be the Skinngygirl Margarita; (4) they would launch in March 2009; and (5) the "exit strategy" was to build the brand in two years and sell it to a large liquor supplier.

    30. Between September and the end of November 2008, Kanbar's and Frankel's representatives negotiated the terms for the new company. During this time,

6
FIRST AMENDED COMPLAINT

Kanbar's and Frankel's representatives negotiated no less than 11 separate term sheets. Wald was involved in reviewing and analyzing the various term sheets. Additionally, Wald was copied on nearly all e-mail communications and often received the revised drafts of the agreements before Frankel. In fact, even Frankel's personal attorney, Merhfar, sought Wald's assistance during the negotiation with Kanbar.

**D.  Frankel Inexplicably Terminates Raw Talent Days Before Entering Into the Agreement with Kanbar to Develop and Market the Skinnygirl Cocktail Brand**

31.  Without explanation, on or about November 25, 2008, Frankel fired Raw Talent.

32.  Upon information and belief, within days of Raw Talent's termination, Frankel and Kanbar executed the agreement to develop and market the Skinnygirl Cocktail Brand.

33.  According to numerous recent media reports, the name of the company that Frankel and Kanbar formed is Skinny Girl Cocktails, LLC ("SGC").

34.  On December 19, 2008—approximately 3 weeks after Frankel fired Raw Talent—SGC was duly formed as a limited liability company in the State of Delaware.

35.  Upon information and belief, in or about August 2009, Frankel, through SGC, launched Skinnygirl Margaritas.

36.  Upon information and belief, only 18 months after launching Skinnygirl Margaritas, in March 2011, Frankel sold her interest in SGC for $120 million.

37.  Upon information and belief, consistent with the Executive Summary, Frankel and Kanbar, through SGC: (1) did form the venture to develop and market the Skinnygirl Cocktail Brand, (2) did exploit Frankel's celebrity to build brand awareness; (3) did launch as its first product the Skinngygirl Margarita; and (4) did

stick to their "exit strategy" by selling the company to a large liquor supplier two years later, i.e. in March 2011.

## FIRST CLAIM FOR FRAUD—INTENTIONAL MISREPRESENTATION
### (Against all Defendants)

38. Raw Talent re-alleges and incorporates by reference paragraphs 1 through 37, above, as though fully set forth herein.

39. On August 7, 2008, in Los Angeles, California, during the negotiations of the Agreement, Frankel made oral representations to Wald on behalf of Raw Talent, to induce Raw Talent to enter into the Agreement, including that (1) she would pay Raw Talent a 10% commission from all gross earnings received or earned by her on any agreement, arrangement, or project in which negotiations had commenced during Raw Talent's representation, regardless of when the agreement, arrangement, or project was actually entered into and or began; and (2) any agreement relating to the exploitation of the Skinnygirl Cocktail Brand would be commissionable under the Agreement.

40. Raw Talent alleges on information and belief that the representations made by Frankel to Wald were false and untrue. In truth and in fact, at the time Frankel made the representations, Frankel did not intend on paying Raw Talent a 10% commission from all gross earnings received or earned by her on any agreement, arrangement, or project in which negotiations had commenced during Raw Talent's representation, regardless of when the agreement, arrangement, or project was actually entered into and or began as she represented that she would under the Agreement. And, more specifically, Frankel did not intend on providing Raw Talent a commission relating to the exploitation of the Skinnygirl Cocktail Brand as Frankel represented that she would under the Agreement.

41. At the time Frankel made the representations on August 7, 2008 to Wald on behalf of Raw Talent, she knew them to be false or was reckless with respect to their truth or falsity.

8
FIRST AMENDED COMPLAINT

42. Frankel intended for Raw Talent to rely upon the representations and made the representations with the intent to induce Raw Talent to enter into the Agreement and thus provide Frankel with personal management services.

43. Raw Talent was not aware of the falsity of the representations made by Frankel and reasonably believed the representations to be true.

44. On August 7, 2008, in justifiable reliance on the representations made by Frankel to Wald, Wald on behalf of Raw Talent was induced to—and did—enter into the Agreement.

45. If Raw Talent had known the true facts, it would not have entered into the Agreement and would not have provided personal management services to Frankel.

46. As a direct and proximate result of Frankel's wrongful conduct as herein alleged, Raw Talent has suffered damages in an amount believed to be in excess of $12 million plus interest thereon at the legal rate, the exact amount of which will be proven at the time of trial.

47. Raw Talent alleges on information and belief that Frankel's acts were done intentionally, maliciously, fraudulently and/or oppressively, with a willful and conscious disregard for Raw Talent's rights under California law, and/or with the intent to vex, injure, or annoy Raw Talent, such as to constitute oppression, fraud, or malice. Accordingly, Raw Talent is entitled to recover punitive and exemplary damages in an amount sufficient to punish Frankel and to deter her from engaging in similar conduct in the future.

## SECOND CLAIM FOR BREACH OF ORAL CONTRACT
**(Against All Defendants)**

48. Raw Talent re-alleges and incorporates by reference paragraphs 1 through 37, above, as though fully set forth herein.

49. On August 7, 2008, Raw Talent, on the one hand, and Frankel, on the other hand, entered into the Agreement.

50. Wald on behalf of Raw Talent agreed that Raw Talent would serve as Frankel's personal manager. Specifically, Raw Talent agreed to advise and counsel Frankel on matters pertaining to her professional career, engagements, and generally in all matters relating to her professional interests.

51. In exchange, Frankel agreed to pay Raw Talent a 10% commission from all gross earnings received or earned by Frankel on any agreement, arrangement, or project in which negotiations had commenced during Raw Talent's representation, regardless of when the agreement, arrangement, or project was actually entered into and or began.

52. Raw Talent performed all conditions, covenants and promises required on its part to be performed under the Agreement, except those that Frankel waived or that were rendered impossible to perform.

53. Frankel breached the Agreement by failing and refusing to pay Raw Talent and/or cause it to be paid commissions due to Raw Talent thereunder, including, but not limited to, commissions on the $120 million Frankel received and/or earned in connection with the sale of her interest in SGC.

54. As a result of Frankel's breach of the Agreement, Raw Talent has suffered damages in an amount believed to be in excess of $12 million in commissions due to Raw Talent under the Agreement together with interest thereon, the exact amount of which will be proven at the time of trial.

### THIRD CLAIM FOR QUANTUM MERUIT
### (Against All Defendants)

55. Raw Talent re-alleges and incorporates by reference paragraphs 1 through 37, above, as though fully set forth herein.

56. In the alternative, in reliance on the false promises described above, Raw Talent was induced by Frankel to render performance including, but not limited to, the management of Frankel's career.

57. Raw Talent, at all times relevant to this claim, actually believed that it

was performing its side of the bargain, which required Raw Talent to commit time and effort to Frankel.

58. Frankel knew that Raw Talent was providing these services. Moreover, Frankel accepted, used and enjoyed the personal management services provided by Raw Talent.

59. Raw Talent has demanded payment from Frankel for rendering such services.

60. Raw Talent is entitled to recover from Frankel the fair and reasonable value of the personal management services provided to Frankel.

61. As a direct and proximate result of Frankel's refusal to pay Raw Talent, it has suffered injury and damages in an amount in excess of the jurisdictional minimums of this Court, the exact amount to be proven at the time of trial.

## FOURTH CLAIM FOR ACCOUNTING
### (Against All Defendants)

62. Raw Talent re-alleges and incorporates by reference paragraphs 1 through 37 and 49-54, above, as though fully set forth herein.

63. Raw Talent is unaware of the exact amounts owed to it by Frankel with respect to monies that she has earned and/or received. The information necessary to ascertain those amounts is complex and strictly within Frankel's control. Accordingly, Raw Talent seeks an accounting of those amounts.

**WHEREFORE**, Raw Talent prays for judgment against the Defendants as follows:

On the First Claim for Fraud:

1. For compensatory damages in an amount to be determined according to proof at trial, but estimated to be no less than $12,000,000;

2. For punitive damages in an amount to be determined according to proof at trial, but in an amount sufficient to punish and deter similar conduct in the future;

11
FIRST AMENDED COMPLAINT

<u>On the Second Claim for Breach of Oral Contract</u>:

3. For compensatory damages in an amount to be determined according to proof at trial, but estimated to be no less than $12,000,000;

4. For prejudgment interest at the legal rate;

<u>On the Third Claim for Quantum Meruit</u>:

5. For compensatory damages in an amount to be determined according to proof at trial, but estimated to be no less than $12,000,000; and

6. For prejudgment interest at the legal rate;

<u>On the Fourth Claim for an Accounting</u>:

7. For an accounting to determine the amount to be due from Frankel to Raw Talent and an order for Frankel to pay said monies to Raw Talent;

<u>On All Claims</u>:

8. For costs of suit herein incurred; and

9. For such other and further relief as this Court may deem just and proper.

Dated: September 7, 2011

FREEDMAN & TAITELMAN, LLP
LAW OFFICES OF JOSHUA G. BLUM, P.C.

By: /s/ Bryan J. Freedman
Bryan J. Freedman
Attorneys for Plaintiff RAW TALENT, INC.

///
///
///
///
///
///

## DEMAND FOR JURY TRIAL

Raw Talent hereby demands trial by jury.

Dated: September 7, 2011

FREEDMAN & TAITELMAN, LLP
LAW OFFICES OF JOSHUA G. BLUM, P.C.

By: _____
Bryan J. Freedman
Attorneys for Plaintiff RAW TALENT, INC.

## PROOF OF SERVICE

**UNITED STATES DISTRICT COURT** ]
] ss.
**CENTRAL DISTRICT OF CALIFORNIA** ]

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 1900, Los Angeles, CA 90067.

On September 7, 2011, I served the following document(s) described as: **FIRST AMENDED COMPLAINT: 1. FRAUD; 2. BREACH OF ORAL; CONTRACT; 3. QUANTUM MERUIT; AND 4. ACCOUNTING; DEMAND FOR JURY TRIAL**

on the interested parties in this action:

[X] by placing a true copy of the document(s) listed above in a sealed envelope(s), with postage thereon fully prepaid, addressed as set forth below. I am readily familiar with the firm's practice for collection and processing of correspondence and other materials for mailing with the United States Postal Service. On this date, I sealed the envelope(s) containing the above materials and placed the envelope(s) for collection and mailing at the address above following our office's ordinary business practices. The envelope(s) will be deposited with the United States Postal Service on this date, in the ordinary course of business.

[] By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Howard Weitzman
Patricia A. Millett
Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, CA 90401

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct and that this Proof of Service was executed on September 7, 2011 at Los Angeles, California.

_____
Bonnhee Cho

1
PROOF OF SERVICE